## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Francis B. Thompson

v.

Marcia R. Thompson

### July 17, 1989

By JUDGE MOSBY G. PERROW, III

On July 11, 1989, the parties appeared in person and by counsel to be heard upon Marcia R. Thompson's objection to the affirmation, ratification, and incorporation by reference under Virginia Code § 20-109.1 of a property settlement agreement dated November 26, 1986. Evidence was heard *ore tenus* and the matter was argued by counsel. The objection was taken under advisement and is ready for decision.

Francis B. Thompson, hereinafter "the husband" and Marcia R. Thompson, hereinafter "the wife", were married on March 22, 1975. The wife is a professed alcoholic and has attended Alcoholics Anonymous. The husband has attended Al-Anon in an effort to cope with the wife's drinking. The wife moved out of the marital residence on November 13, 1986, and has resided in Florida since February 1, 1988.

The wife wanted a property settlement agreement at the time she moved out of the marital residence to protect her interest although she was unwilling to hire an attorney to prepare one. The husband hired an attorney to prepare an agreement and a first draft was delivered to the wife by the husband after she had moved out of the marital residence. The husband and the wife reviewed the document together several days later, after the wife had had an opportunity to go over the document herself, and at that time the wife requested a revision with respect to that

portion of the agreement which dealt with the marital residence. The one revision requested by the wife was made and the parties signed the agreement at the attorney's office on November 26, 1986. The attorney who prepared the agreement was not present when the couple signed it.

The wife had an opportunity to consult an attorney before signing the agreement but did not do so. She did not understand some of the legal terminology in the document, but she did understand the property division and support provision in the agreement which she felt at the time were adequate and fair. She understood the document to be a final settlement, although she states now that at the time she signed it she hoped for an eventual reconciliation even though she had twice previously announced her intention to end the marriage and on each occasion actually left the marital residence for brief periods of time. There is no evidence that the wife was intoxicated at the time she signed the agreement or that her professed alcoholism in any way impaired her faculties so as to render her incompetent to enter into the agreement, and her attorney conceded these points in oral argument.

The agreement, *inter alia*, provided for spousal support for the wife for a period of twelve consecutive months beginning December 1, 1986, and for disposition of the marital residence. Under the contract, either party could purchase the other's interest in the marital residence. The contract further provided for the sale of the marital residence after a divorce at the request of either party and for an equal division of the net proceeds from such sale between the parties. Under the agreement the husband had the right to remain in the marital residence until it was disposed of and all expenses associated with its maintenance were to be borne by the husband. The contract prohibited any woman outside of the husband's immediate family from living in the marital residence on a temporary or permanent basis so long as the property was jointly owned by the parties and provided for the immediate sale of the residence upon violation of the prohibition, which was the one revision to the original draft of the contract made by the wife. The husband purchased the wife's interest in the property for $17,500.00 in October, 1987, in accordance with the agreement.

The wife objects to the agreement on the grounds (1) that the husband has violated a material provision, the effect of which is to invalidate the entire contract, and (2) that she entered into it under duress. The husband maintains that the agreement is valid and asks for affirmation, ratification, and incorporation under the statute. He further maintains that the wife is estopped to challenge the validity of the contract for the first time roughly two years after it was entered into and after she has received all of its benefits. The wife concedes that the only practical and legally significant benefit to be gained by invalidating the agreement at this time would be to reopen the question of her entitlement to further spousal support.

The breach complained of by the wife is a violation of the prohibition against other women living in the marital residence. The wife failed to establish by clear and convincing evidence a breach of the prohibition against other women living in the marital residence. Furthermore, the contract provides a remedy for the breach complained of which is the sale of the residence to a third party in the event the husband is unable to purchase the wife's interest. Therefore, even had there been a breach as alleged, it would have been rendered moot by the wife's subsequent sale of her interest in the residence to the husband which was the remedy provided by the contract in such circumstances. The Court concludes that the agreement has not been invalidated by a breach of a material provision as alleged by the wife.

"[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain," *Cooley v. Cooley*, 220 Va. 749, 752 (1980). "In Virginia, duress is not readily accepted as an excuse. [citation omitted]. The party alleging fraud [duress] is required to prove it by clear and convincing evidence," *Division of Social Services v. Unknown Father*, 2 Va. App. 420, 434 (1986). Upon a review of the evidence and authorities cited, the Court concludes that the wife did enter into the agreement under duress. The Court further concludes upon a review of the evidence and the document in question, that there is no element of unconscionability present

in the negotiations between the parties or in the agreement itself, *compare Derby* v. *Derby*, 8 Va. App. 19 (1989). Under the Court's view of the law and the evidence, it is unnecessary to address the husband's estoppel theory which is based upon *Gloth* v. *Gloth*, 154 Va. 511 (1930).

The agreement will be affirmed, ratified, and incorporated in any decree of divorce entered herein and counsel are directed to proceed accordingly.